IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



EILEEN MCAFEE,

  Plaintiff,

v.

CHRISTINE M. BOCZAR, et al.,           Civil Action No. 3:11cv646

  Defendants.

and

SHARON WAMPLER,

  Movant.

## MEMORANDUM OPINION

By Order dated June 11, 2012, the Honorable Robert E. Payne referred Movant Sharon Wampler's Motion to Quash Subpoena Duces Tecum for Confidential Medical Records ("Motion to Quash") (Docket No. 28) to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). This motion has been fully briefed (Docket Nos. 35, 36, 41) and is ripe for disposition. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process. For the reasons that follow, the Court will DENY Wampler's Motion to Quash.

### I. Factual and Procedural Background

On September 28, 2011, Plaintiff Eileen McAfee filed a lawsuit alleging that Defendant Christine M. Boczar, an Animal Control Officer and Deputy Sheriff in Powhatan County, Virginia, maliciously instigated criminal proceedings against McAfee without probable cause.

(Compl. ¶¶ 1-2.) Specifically, Boczar sought and obtained a misdemeanor warrant for arrest, charging McAfee with violating Virginia Code § 18.2-313.1.[1] McAfee asserts three claims in her Complaint: (1) a claim pursuant to 42 U.S.C. § 1983 and premised on the Fourth Amendment, alleging that Boczar instigated criminal charges without probable cause; (2) a malicious prosecution claim under state law; and, (3) a false imprisonment claim under state law. (Compl. ¶¶ 2, 40-50.)

During discovery, Boczar indicated she sought a warrant for McAfee's arrest relying in part on conversations Boczar had with Wampler, a community public health nurse at Henrico Health Department, during which Wampler discussed conversations she had had with McAfee. (Pl.'s Mem. Opp'n Mot. Quash ("Pl.'s Mem. Opp'n") Ex. B, Boczar Dep. 31:19-32:1.) Wampler testified during her deposition that she has postural orthostatic tachycardia syndrome which could affect her memory and that she was being evaluated for memory problems. (Pl.'s Mem. Opp'n Ex. C, Wampler Dep. 120:23-122:14.)

On May 20, 2012, Wampler "returned from a weekend trip" to find a subpoena duces tecum "duct taped to the front door of her residence." (Movant's Mot. Quash ¶ 2.) Counsel for McAfee had issued the subpoena, commanding the production of the following:

- Any and all office notes and records, including, but not limited to, handwritten and transcribed notes of all doctors, nurses, technicians, therapists, counselors, and all other medical personnel, omitting nothing for the treatment of any condition, medical, psychological or otherwise, that could affect memory or cognitive function including but not limited to Postural Orthostatic Tachycardia Syndrome;

---

[1] This statute makes it unlawful to "knowingly withhold information from, or knowingly give false information to, any lawfully authorized governmental agent which would reasonably lead to the discovery or location and capture of any animal reasonably identifiable as one that has potentially exposed a human being to rabies." Va. Code § 18.2-313.1.

2

- Any and all test results and reports, including, but not limited to, laboratory, histology, cytology, pathology, radiology, CT scans, MRIs, PET scans, and pulmonary testing, omitting nothing for the treatment of any condition, medical, psychological or otherwise, that could affect memory or cognitive function including but not limited to Postural Orthostatic Tachycardia Syndrome;

- Any and all echocardiogram videotapes, CD recordings and/or DVD recordings and corresponding reports, regardless of the date(s); omitting nothing for the treatment of any condition, medical, psychological or otherwise, that could affect memory or cognitive function including but not limited to Postural Orthostatic Tachycardia Syndrome;

- All pharmacy and/or prescription records, including, but not limited to, records indicating NDC numbers and drug information handouts/monographs; omitting nothing for the treatment of any condition, medical, psychological or otherwise, that could affect memory or cognitive function including but not limited to Postural Orthostatic Tachycardia Syndrome.

- Any and all Workers' Compensation Commission information, including claims, denials, and medical records; omitting nothing for the treatment of any condition, medical, psychological or otherwise, that could affect memory or cognitive function including but not limited to Postural Orthostatic Tachycardia Syndrome.

(Pl.'s Mem. Opp'n Ex. A.) Counsel for McAfee had signed the subpoena on May 17, 2012, a process server had served the subpoena by posting on May 17, 2012, and the subpoena set a return date of May 25, 2012, the scheduled close of discovery. (Pl.'s Mem. Opp'n Ex. A; Apr. 23, 2012 Consent Order Extending Time to Complete Discovery.)

On May 24, 2012, Wampler filed her Motion to Quash. She asserts the following grounds to quash the subpoena: (1) improper service; (2) inadequate time for response; (3) confidentiality and/or privilege; (4) relevancy; and, (5) undue burden, annoyance, embarrassment, and oppression.

## II. Applicable Law

The Federal Rules of Civil Procedure govern the scope of discovery: "Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or

3

defense . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Pursuant to Federal Rule of Civil Procedure 45, parties may use subpoenas to command parties or non-parties to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). A court must quash or modify a subpoena that "fails to allow a reasonable time to comply; . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). "[T]he burden for showing that a subpoena must be quashed under Rule 45(c)(3) is at all times on the movant." *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, No. 1:11MC35, 2012 WL 112325, at *2 (N.D. W. Va. Jan. 12, 2012); *see Sheet Metal Workers Int'l Assoc. v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994).

Certain limitations apply to all discovery, including information requested via subpoenas. Fed. R. Civ. P. 26(b)(1). For example, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). "The party seeking a protective order has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'" *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (*quoting Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 12010-11 (9th Cir. 2002)). Good cause cannot be shown merely through "'stereotyped and conclusory statements'" of harm. *Great Am. Ins. Co. v. Gross*, No. 3:05cv159, 2007 WL 1577503, at *12 (E.D. Va. May

30, 2007) (*quoting S.E.C. v. Dowdell*, No. 3:01cv116, 2002 WL 1969664, at *2 (W.D. Va. Aug. 21, 2002)).

### III. Analysis

#### A. The Process Server Properly Served the Subpoena

Wampler first challenges the service of the subpoena as improper. Wampler does not appear to challenge the method of service,[2] but instead argues that the process server did not properly complete the proof of service section of the subpoena. She states that she "returned from a weekend trip on May 20, 2012 to find the subpoena duct taped to the front door of her residence. The proof of service portion of the subpoena is blank." (Movant's Mot. Quash ¶ 2.) However, the process server completed an Affidavit of Service, indicating that he served the subpoena on May 18, 2012 by posting on the front door. (Pl.'s Mem. Opp'n Ex. A.) The Affidavit of Service satisfies the proof of service requirements contained in Rule 45(b). Fed. R. Civ. P. 45(b)(4) (requiring the server to certify "the date and manner of service and the names of the persons served"). Therefore, the Court cannot find deficient service based solely on the blank service portion of the subpoena.

#### B. The Subpoena Provided an Adequate Time in Which to Respond

Wampler next contends that the subpoena provides an inadequate time in which to respond. Wampler notes that, under the Code of Virginia, subpoenas seeking health records must

---

[2] A challenge to the method of service would likewise fail. "Serving a subpoena requires delivering a copy to the named person . . . ." Fed. R. Civ. P. 45(b)(1). In this case, the process server delivered the subpoena by posting, and Wampler received the subpoena, finding it duct taped to the front door of her residence. This Court has held that Rule 45(b) does not require "personal service to the exclusion of other manners of service" so long as "the non-personal service was effected by means reasonably sure to complete delivery." *Bland v. Fairfax Cnty., Va.*, 275 F.R.D. 466, 471-72 (E.D. Va. 2011). Wampler does not argue that service by posting fails to reasonably ensure completed delivery.

5

provide at least fifteen days in which to respond. (Movant's Mot. Quash ¶ 3 (*citing* Va. Code § 32.1-127.1:03(H)(1)).) Wampler fails to explain why Virginia law, especially procedural law, should govern in this matter based on federal question jurisdiction. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938) (holding that a court exercising diversity jurisdiction must apply the substantive law of the forum state). Because the Court finds Virginia procedural law inapplicable in this matter, the Court declines to quash the subpoena on this ground.[3]

### C. Confidentiality and Privilege

Wampler asserts that the subpoena improperly seeks confidential and privileged medical records. Federal Rule of Evidence 501 governs the law of privilege in federal court. It provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. Federal common law supplies the applicable law of privilege in a federal question case. "This holds true even when a court exercises jurisdiction over pendent state law claims in addition to federal claims." *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 125

---

[3] The Federal Rules of Civil Procedure requires a court to quash or modify a subpoena that "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(c)(3)(A)(i). Here, service occurred on May 18, 2012, Wampler received the subpoena on May 20, 2012, and the subpoena listed a return date of May 25, 2012. Wampler had seven days from service and five days from receipt in which to respond to the subpoena.

Simply calling the time allowed "inadequate," Wampler fails to demonstrate why the subpoena provided an unreasonable time under Rule 45 in which to produce the responsive medical records in her possession, custody, or control. The Court cannot find that the subpoena failed to allow a reasonable time to comply without any assertion of fact as to why by Wampler. Moreover, the Court will modify the time frame to permit a viable return date.

(E.D. Va. 2009); *see Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 n.3 (4th Cir. 2001) ("[I]n a case involving both federal and state law claims, the federal law of privilege applies.").

Wampler first contends that the physician-patient privilege provides a basis for the Court to quash the subpoena. This claim of privilege cannot prevail because no such federal statutory or common law privilege exists. *Cappetta*, 266 F.R.D. at 126 (*citing Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977); *In re Grand Jury Subpoena John Doe No. A01-209*, 197 F. Supp. 2d 512, 514 (E.D. Va. 2002)). To the extent Wampler asserts that Virginia law recognizes a physician-patient privilege, this argument likewise cannot prevail. Even though the Court exercises jurisdiction over pendent state law claims, federal common law supplies the applicable law of privilege in this federal jurisdiction case. *Cappetta*, 266 F.R.D. at 125; *Virmani*, 259 F.3d at 287 n.3.

Second, Wampler relies on the psychotherapist-patient privilege as a basis to quash the subpoena.[4] The Supreme Court of the United States has held that "confidential communications between a licensed psychotherapist and [his or] her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). This privilege "serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Id.* at 11. The privilege is absolute in that it is not subject to any balancing test, because an "'uncertain privilege'" subject to later varying application by the

---

[4] The Court notes that Wampler failed to expressly invoke this privilege until her "memorandum in support," which she filed after McAfee's responsive briefing. (Movant's Mem. Supp. Mot. Quash 4.) McAfee did not seek leave to file a surreply or take any other action to protest the invocation of the psychotherapist-patient privilege. Considering the record before the Court and in the interests of judicial economy and of justice, the Court will consider the applicability of this privilege.

courts "'is little better than no privilege at all.'" *Id.* at 18 (*quoting Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)).

Because the subpoena requests a broad range of medical records, including office notes and records of therapists and counselors for the treatment of psychological conditions, the psychotherapist-patient privilege likely protects some documents from disclosure. (*See* Pl.'s Mem. Opp'n Ex. A.) Therefore, the Court will modify the subpoena to exclude documents protected by the psychotherapist-patient privilege. However, if Wampler withholds subpoenaed information based on the psychotherapist-patient privilege, she must expressly claim that privilege and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A)(ii).

Wampler also contends that all of her medical records requested by the subpoena should be protected as confidential. To protect Wampler's interest in the privacy of her medical records, the Court will direct counsel of record to establish necessary precautions to ensure that Wampler's medical records are not distributed to third parties, are not made a matter of public record, and are not used for purposes beyond the scope of this case.

### D. The Subpoena Seeks Relevant Information

Wampler next argues that the subpoena requests documents not relevant to the case at hand. Information about Wampler's ability to remember will weigh on her credibility and her ability to recall the conversations she had with McAfee and Boczar. This in turn will relate to the credibility of McAfee and Boczar and their account of the communications with Wampler. The Court finds that the subpoena seeks documents that appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

8

### E. The Subpoena Shall Be Modified Because It Is Overbroad

Finally, Wampler contends that the subpoena subjects her to an undue burden, annoyance, embarrassment, and oppression. Wampler, however, fails to further expand or provide any specifics to support her argument. Nonetheless, the Court finds the subpoena to be overbroad. The subpoena seeks "any and all" medical records "omitting nothing" related to conditions that might affect memory or cognitive function. (Pl.'s Mem. Opp'n Ex. A.) The subpoena includes no time frame for these medical records. Because Wampler's deposition indicates she only recently suffers from memory problems, the Court will modify the subpoena to include a time frame of January 2010, one year prior to the arrest warrant at issue in this case, to the present. (*See* Pl.'s Mem. Opp'n Ex. C, Wampler Dep. 120:23-122:14.)

### IV. Conclusion

For the foregoing reasons, the Court will DENY Wampler's Motion to Quash. (Docket No. 28.) However, the subpoena will be MODIFIED to the following extent: (1) Wampler shall be required to produce only responsive documents from January 2010 to the present, and (2) Wampler shall not be required to produce responsive documents protected from disclosure by the psychotherapist-patient privilege as recognized by the Supreme Court of the United States in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). Further, the Court will ORDER the following:

1. Counsel of record shall establish necessary precautions to ensure that Wampler's medical records are not distributed to third parties, are not made a matter of public record, and are not used for purposes beyond the scope of this case.

2. Wampler must respond to the subpoena as modified by the Court no later than June 29, 2012.

3. If Wampler withholds subpoenaed information based on the psychotherapist-patient privilege, she must expressly claim that privilege and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will

9

enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A)(ii). Any privilege log must be provided no later than June 29, 2012.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: June 22, 2012